THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION CINCINNATI

ANGEL HERNANDEZ,

    Plaintiff,

vs.

THE OFFICE OF THE COMMISSIONER
OF BASEBALL, MAJOR LEAGUE
BASEBALL BLUE, INC.,

    Defendants.

Case No.1:17-CV-00456-MRB

Judge Michael R Barrett

**ORDER**

This matter is before the Court on Defendants' Motion to Dismiss or in the Alternative to Transfer Venue to the Southern District of New York (Doc. 8). After the Parties fully briefed the matter, the Court heard oral argument (Doc. 13). Accordingly, this matter is ripe for disposition.

**I.    BACKGROUND**

Plaintiff Angel Hernandez, a Florida resident, filed this action in the Southern District of Ohio against the Office of the Commissioner of Baseball (the "Office of the Commissioner"), an unincorporated association headquartered in New York, and Major League Baseball Blue, Inc. ("MLB Blue," and collectively with the Office of the Commissioner, "Defendants"), a Delaware corporation with its principal executive office in New York. (Doc. 1, ¶¶2-3) (Doc. 8-2, Woodfork Decl., ¶¶4, 11). Plaintiff is a Cuban-born umpire for Major League Baseball, and in his Complaint he: alleges race, color and/or national origin discrimination under Title VII of the Civil Rights Act of 1964 (Count One); alleges race and/or color discrimination under 42 U.S.C. §

1

1981 (Count Two); alleges race, color and/or national origin discrimination under O.R.C. § 4112.02 (Count Three); and (4) seeks a declaratory judgment (Count Four). (Doc. 1). He specifically asserts that, since 2011, Defendants have: (1) not selected him for a World Series assignment, and (2) not selected him for the position of crew chief, both allegedly because he is Latino. (*Id. at* ¶¶ 70–71, 74, 85–88, 101, 108, 111–112, 118, 120–122, 128, 130–132.)

On the basis that the alleged injurious decisions did not occur in Ohio, Defendants argue that they are entitled to an Order: dismissing Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2); dismissing Count Three of the Complaint pursuant to Rule 12(b)(6) if the Court does not dismiss Plaintiff's Complaint in its entirety; dismissing Plaintiff's Complaint for improper venue pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a); or, in the alternative, transferring venue to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). (Doc. 8).

Based on the Parties' written submissions, the Court accepts the following facts as true for purposes of determining the issues before the Court:

    A. MLB Blue

MLB Blue employs seventy-six individuals, each of whom is a full-time Major League umpire, including Plaintiff. (Doc. 8-2, Woodfork Decl., ¶5). MLB Blue's officers and its sole director are based in New York, New York at its principal executive office. (*Id.* at ¶6). MLB Blue does not maintain an office in Ohio. (*Id.* at ¶7). All of MLB Blue's business records, including records relating to umpires, are maintained in New York. (*Id.* at ¶8). Furthermore, MLB Blue does not lease or own property in Ohio, or have a designated agent for service of process within Ohio. (*Id.* at ¶¶ 9–10).

B. Office of the Commissioner

The Office of the Commissioner is an unincorporated association headquartered in New York, New York. (Doc. 1, ¶2)(Doc. 8-2, Woodfork Decl., at ¶11). The Office of the Commissioner does not maintain an office in Ohio, and its officers and executives are based in its New York headquarters. (*Id*. at ¶¶ 12–13). With limited exceptions for business records kept by employees working remotely, none of whom are based in Ohio, the Office of the Commissioner's business records, including those related to services provided by Major League umpires, are maintained at its headquarters in New York, New York. (*Id*. at ¶14). Moreover, the Office of the Commissioner does not lease or own real property in Ohio, and does not have a designated agent for service of process within Ohio. (*Id.* at ¶¶ 15–16).

C. Umpire Services

Through a services agreement, MLB Blue provides the services of Major League umpires to the Office of the Commissioner to officiate baseball games between the 30 Major League Clubs. (*Id.* at ¶18). Umpires travel to Major League ballparks and Spring Training facilities throughout the United States for these games. (*Id.* at ¶19). Umpires are also scheduled to perform replay official duties at the Replay Operations Center. (*Id.* at ¶20). Umpires assigned to games in the Replay Operations Center work from the Center, located in New York, New York, to analyze plays subject to review during live games. (*Id.*)

During the 2017 162-game championship season, which was scheduled to run from April 2, 2017 through October 1, 2017, Plaintiff was scheduled to umpire 113 games and perform replay official duties for an additional 20 days. (*Id.* at ¶21). Plaintiff umpired 88 games, the All-Star Game, and (at the time of Defendants' motion) was scheduled to umpire an additional 12 games in states other than Ohio. (*Id.*) At the time of Defendants' motion, Plaintiff umpired five

3

games at Great American Ballpark in Cincinnati, and four games (and was scheduled to umpire an additional four games) at Progressive Field in Cleveland. (*Id.*)

Plaintiff argues, and Defendants do not appear to dispute for purposes of their Motion, that: (1) the Office of the Commissioner derives revenue from the Cincinnati and Cleveland clubs; (2) only a small fraction of the Office of the Commissioner's employees who have input in the hiring and promotion of umpires reside in and work in New York, with the various umpire supervisors and evaluators working remotely in places including but not limited to Iowa, Kentucky, and Colorado; (3) when umpires work in Cincinnati and Cleveland, Ohio taxes are withheld from their paychecks; (4) Major League Baseball derives from Ohio millions of dollars in licensing revenue. (Doc. 11; PageID 94-95). Defendants counter, however, that Joe Torre—the one witness Plaintiff makes the sole focus of his 138-paragraph complaint and the ultimate decisionmaker as to the employment decisions challenged in this lawsuit—works in New York, New York and lives in the New York metropolitan area. (Doc. 12-1, ¶3)("My office is located at the Office of the Commissioner's headquarters in New York, New York"); (id. at ¶6)("In my role as Chief Baseball Officer at the Office of the Commissioner, I am responsible for making the final decisions as to the umpire crew chief appointments and World Series assignments."). Defendants persuasively argue that Plaintiff cannot dispute the foregoing factual assertions with conclusory arguments regarding Randy Marsh's involvement in employment decisions relating to Plaintiff.

## II. ANALYSIS

### A. Motion to Dismiss under Fed. R. Civ. P. 12(b)(2)

#### 1. Standard

Where a defendant has moved to dismiss a case under Rule 12(b)(2) for lack of personal jurisdiction and the district court rules on the motion without an evidentiary hearing, the plaintiff need only make a "prima facie" showing that the court has personal jurisdiction. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012), citing *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006). The Court considers the pleadings in the light most favorable to the plaintiff and does not weigh the disputed facts, although the court may consider the defendants' undisputed factual assertions. *Id.* (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996)).

#### 2. Residency

Plaintiff attempts to convince this Court that both Defendants are residents of Ohio. Plaintiff relies on *Reynolds v. Int'l Athletic Federation*, 23 F.3d 1110 (6th Cir. 1994). However, *Reynolds* is inapposite, because the analysis on which Plaintiff relies was made in context of subject matter jurisdiction, not personal jurisdiction. *Id.* at 1114. Ultimately, the Court agrees with Defendants that—as an unincorporated association headquartered in New York, and as Delaware corporation with its principal executive office in New York—Defendants are not residents of Ohio for purposes of personal jurisdiction. (Doc. 8-1; PageID 67) (citing *Wedemeyer v. USS FDR (CV-42) Reunion Ass'n*, Case. No. 1-09-57, 2010 Ohio App. LEXIS 1256 (Ohio Ct. App. April 5, 2010).

The Sixth Circuit has stated that, "[u]nder Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012).

### 3. Ohio's Long-arm Statute

To establish jurisdiction, Plaintiff relies on the following four sections of Ohio's long arm statute, under which a court may "exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's":

> (1) Transacting any business in this state;
> (2) Contracting to supply services or goods in this state;
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; […]

Ohio Rev. Code Ann. § 2307.382(A). Plaintiff's cause of action must "arise" from the foregoing conduct. Ohio Rev. Code § 2307.382(C) ("When jurisdiction over a person is based solely on this section, only a cause of action arising from acts enumerated in this section may be asserted against him."). The Sixth Circuit has explained:

> [T]he Ohio long-arm statute requires a "proximate cause" relationship between the defendant's act and the plaintiff's cause of action. *Brunner v. Hampson*, 441 F.3d 457, 465-66 (6th Cir. 2006). A mere "but-for" connection is insufficient. *Id.* As a result, we have determined that the Ohio long-arm statute's "arising from" prong has less reach than the Due Process Clause[.]

*Lexon Ins. Co. v. Devinshire Land Dev., LLC*, 573 F. App'x 427, 429 (6th Cir. 2014). *Accord*: *Miami Valley Fair Hous. Ctr., Inc. v. Steiner & Assocs.*, No. 3:08-cv-150, 2012 U.S. Dist. LEXIS 164006, at *36 (S.D. Ohio Nov. 16, 2012) ("'personal jurisdiction does not exist [under Ohio's long-arm statute] where the circumstances which may have caused the injury are

6

unrelated to the conduct of business in Ohio.'"), quoting *Signom v. Schenck Fuels, Inc.*, No. C-3-07-037, 2007 U.S. Dist. LEXIS 42941, at *11 (S.D. Ohio June 13, 2007)), *adopted at* 2012 U.S. Dist. LEXIS 172405 (S.D. Ohio Dec. 5, 2012). "[P]roximate cause exists 'where an act or failure to act, in a natural and continuous sequence, directly produces the injury and without which it would not have occurred.'" *U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, No. C-03-06- 371, 2007 WL 1026421, at *7 (S.D. Ohio Mar. 29, 2007) (quoting O.J.I. § 19.10). Feeling the impact in Ohio of an allegedly injurious decision made elsewhere is insufficient to establish proximate cause. *See Weber v. National Football League*, 112 F. Supp. 2d 667, 675 (N.D. Ohio 2000) (granting motion to dismiss for lack of personal jurisdiction where the plaintiff's tort claims did not arise from business the NFL transacted in Ohio, or any other basis of conduct articulated in the long-arm statute; rejecting plaintiff's argument that the "effect" of the defendants' actions were felt in Ohio and elsewhere).

Here, Plaintiff has not established that his injuries were proximately caused by Defendants' contacts with Ohio. According to Plaintiff, he was allegedly injured by Defendants' decision to not select him for: (1) crew chief, and (2) to umpire the World Series. There is no argument that either of these decisions were made in Ohio – just that the effects of those decisions were allegedly felt here, among many other locales. (Doc. 11, PageID 99) ("We do know that by Defendants' admission, Plaintiff has umpired in the State of Ohio, and since he should have been a crew chief in these last several years, he thus has been injured in Ohio."). This argument falls short of establishing proximate cause. *Weber*, 112 F. Supp. 2d at 675. Plaintiff's claims are therefore unrelated to Defendants' contacts with Ohio. *Kehoe Component Sales, inc. v. Best Lighting Prods.*, No. 2:08-cv-752, 2009 U.S. Dist. LEXIS 74852, at *18 (S.D. Ohio Aug. 19, 2009) ("cause of action must arise from the defendant's activities in the forum

state"). Because Plaintiff cannot demonstrate that jurisdiction is conferred by Ohio's long-arm statute, the Court need not conduct a due process analysis. *See Conn*, 667 F.3d at 713 ("[I]f jurisdiction is not proper under Ohio's long-arm statute there is no need to perform a Due Process analysis because jurisdiction over the defendant cannot be found.").

Accordingly, the Court lacks personal jurisdiction over Defendants.

B. Motion to Dismiss under Fed. R. Civ. P. 12(b)(3)

1. Standard

Defendants also argue that dismissal or transfer is warranted because venue is improper. A defendant may move to dismiss for improper venue under Rule 12(b)(3). The plaintiff bears the burden of proving that venue is proper. *Soddu v. P&G Co.*, No. 1:08-cv-693, 2009 U.S. Dist. LEXIS 130120, at *8-9 (S.D. Ohio Nov. 10, 2009). In making Rule 12(b)(3) determinations, the court "may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Id*. The court may dismiss or, in the interest of justice, transfer a case to "any district or division in which it could have been brought." 28 U.S.C. 1406(a). Accord: *Mansfield Prop., v. Med. Dev. Mgmt.*, No. 08-cv-668, 2008 U.S. Dist. LEXIS 70841, at *5 (N.D. Ohio).

2. Venue under 28 U.S.C. § 1391(b)(1)

In his Complaint, Plaintiff asserts that venue is proper under 28 U.S.C. § 1391(b)(1), because Defendants "reside" in Ohio. However, 28 U.S.C. § 1391(c)(2) provides that for purposes of venue, a defendant is a "resident" only "in any judicial district in which such defendant is *subject to the court's personal jurisdiction with respect to the civil action in*

8

*question.*" (emphasis added). As discussed *supra*, Defendants are not subject to personal jurisdiction here with respect to this civil action, so they are not "residents" of Ohio for purposes of the venue statute.

### 3. Venue under 42 U.S.C. § 2000e-5(f)(3)

Compounding the defects in venue is the fact that Plaintiff's Title VII claim is governed by 42 U.S.C. § 2000e-5(f)(3), not 28 U.S.C. § 1391(b)(1). To establish venue under 42 U.S.C. § 2000e-5(f)(3), a plaintiff may bring a Title VII lawsuit in:

> (1) Any judicial district in the State in which the unlawful employment practice is alleged to have been committed;
> (2) The judicial district in which the employment records relevant to such practice are maintained and administered; or
> (3) The judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice.

The latter option "refers to the aggrieved individual's principal place of work, and not any district in which the individual's work might take him." *James v. Booz-Allen & Hamilton, Inc.*, 227 F. Supp. 2d 16, 23 (D.C. 2002).

Plaintiff has not established that his Title VII claim is properly venued in Cincinnati. First, and as this Court has already concluded, Plaintiff cannot establish that the allegedly unlawful employment *practices* were committed in this district. *See Whipstock v. Raytheon Co.*, No. 07 Civ. 11137, 2007 WL 2318745, at *3 (E.D. Mich. Aug. 10, 2007) (rejecting a plaintiff's attempt to satisfy 42 U.S.C. § 2000e-5(f)(3) by arguing that "the effects of the alleged unlawful employment practices [were] felt" in the Eastern District of Michigan). Second, the relevant records reside in New York, not Cincinnati. (Doc. 8-2, ¶¶8, 22). Finally, no facts before the Court suggest that Cincinnati is where Plaintiff would have principally worked but for Defendants' unlawful practices. *James*, 227 F. Supp. 2d at 23.

9

Accordingly, Defendants' arguments regarding improper venue are well taken.

C. Transfer

Should the Court be disinclined to dismiss the case outright for lack of personal jurisdiction and improper venue, Defendants make the alternative request to transfer this matter to the Southern District of New York.

Defendants argue that this Court is empowered to transfer this case pursuant to 28 U.S.C. § 1404(a). However, "because this Court concluded that it does not have personal jurisdiction [over Defendants], 28 U.S.C. § 1404(a) is not the applicable transfer statute." *Pierson v. St. Bonaventure Univ.*, No. 2:05-cv-0581, 2006 U.S. Dist. LEXIS 4662, at *23 (S.D. Ohio Jan. 23, 2006), citing *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962); *Martin v. Stokes*, 623 F.2d 469 (6th Cir. 1980) (holding that a transfer under 28 U.S.C. § 1404(a) may not be granted unless the court has personal jurisdiction). Instead, 28 U.S.C. § 1406(a) is the applicable transfer statute: "[T]ransfers under § 1406(a) for improper forum are 'based not on the inconvenience of the transferor forum but on the *impropriety* of that forum.'" *Wahl v. GE*, 786 F.3d 491, 497 (6th Cir. 2015), quoting *Martin*, 623 F.2d at 472. Accordingly, the Court will assess Defendants' transfer motion under 28 U.S.C. § 1406(a).

Pursuant to 28 U.S.C. § 1406(a), a "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Here, there appears to be no dispute that this case could have been brought in Southern District of New York. In addition, the Court finds that the interests of justice favor transfer. In this case, process has been served, and some preliminary discovery has been completed. To dismiss this case would only result in the unnecessary duplication of fees and costs. Finally, Defendants will

suffer no prejudice from the transfer. Defendants themselves sought transfer in the event that the Court did not dismiss Plaintiff's claims. Therefore, the Court concludes that transfer, as opposed to dismissal, is the proper course of action. *See Stone v. Twiddy & Co. of Duck, Inc.*, No. 1:10cv591, 2012 U.S. Dist. LEXIS 104738, at *18-19 (S.D. Ohio July 27, 2012).

### III. CONCLUSION

Therefore, consistent with the above, Defendants' Motion to Dismiss or in the Alternative to Transfer Venue to the Southern District of New York (Doc. 8) is **GRANTED IN PART**. In lieu of dismissal, this matter is hereby **TRANSFERRED** to the United States District Court for the Southern District of New York. Having found that this Court lacks personal jurisdiction over Defendants, it would be improvident for this Court to reach the merits of Defendants' Rule 12(b)(6) motion. *See, e.g., Nationwide Life & Annuity Ins. Co. v. Golden*, No. 2:12-cv-213, 2013 U.S. Dist. LEXIS 2644, at *39 (S.D. Ohio Jan. 7, 2013). In theory, the undersigned could deny the Rule 12(b)(6) motion without prejudice to refiling in the transferee court; however, in an effort to comport with the transferee court's preferences, the undersigned declines to pass on the Rule 12(b)(6) relief at all, so that the "transferee court will be at liberty to resolve such motions or to solicit re-briefing on them." *See, e.g., Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 413 (S.D.N.Y. 2017).

**IT IS SO ORDERED.**

                                              s/*Michael R. Barrett*
                                              United States District Judge